[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14134
Non-Argument Calendar
_____

Agency No. A070-891-177

XIAO FENG ZHENG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(March 6, 2013)

Before MARCUS, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Xiao Zheng, a native and citizen of China, appeals the Board of Immigration

Appeals's (BIA) order affirming the Immigration Judge's (IJ) denial of his

application for asylum under the Immigration and Nationality Act (INA), § 208(a),

8 U.S.C. § 1158(a), withholding of removal, INA § 241(b)(3), 8 U.S.C.

§ 1231(b)(3), and relief under the United Nations Convention Against Torture and

Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), 8 C.F.R.

§ 208.16(c).  Zheng first filed for asylum in 1993 based on his political opinion,

alleging that the Chinese government forced his former wife to undergo an

abortion.  In 1997, an IJ ordered Zheng removed *in absentia*.  In 2009, another IJ

permitted Zheng to reopen his case and file an amended application for asylum.

Zheng's amended application alleged persecution based on his former wife's

forced abortion, his political opinion, and his involvement with the Chinese

Democratic Party (CDP).

In 2011, after a merits hearing, an IJ denied Zheng's application for asylum,

withholding of removal, and CAT relief.  The IJ made an adverse credibility

determination, found that Zheng had not corroborated essential elements of his

claim, and held that even assuming Zheng was credible, he had not established past

persecution or a well-founded fear of future persecution.  In 2012, the BIA

affirmed the IJ's denial concluding that: (1) Zheng was not credible as to his

political opinion claim based on two separate inconsistencies in the record; and (2)

Zheng did not establish past persecution based on his opposition to China's

2

family-planning policy. *See Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009).

Zheng's appellate brief before this Court is nearly identical to his BIA brief. Zheng does not make any arguments on appeal that directly challenge the BIA's order, which contained the BIA's independent determinations regarding Zheng's credibility and persecution, and relied only in part on the IJ's reasoning. Accordingly, we limit our review of Zheng's claims to the extent that the BIA relied on the IJ's reasoning. Zheng's arguments regarding the authenticity of the documents, corroboration of his claims, low education, and the weight given to his evidence, are subsequently beyond the scope of our review. *See Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007).[1] Thus, on appeal, we review Zheng's contentions that: (1) there was no material inconsistency in his claims; and (2) he established past persecution based on his former spouse's forced abortion.

## II.

We review the BIA's decision to the extent that the BIA expressly adopted the IJ's decision. *Id*. "Insofar as the Board adopts the IJ's reasoning, we will review the IJ's decision as well." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). Where the BIA expressly agrees with the IJ's finding as to a specific

---

[1] Additionally, because Zheng failed to raise the denial of his claims for withholding of removal and CAT relief on appeal, he has abandoned these issues. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (per curiam).

3

issue, we review the decisions of both the IJ and the BIA on that issue. *See Kazemzadeh*, 577 F.3d at 1350 ("Because the Board agreed with the finding of the [IJ] that [the applicant] failed to establish a well-founded fear of persecution on account of his religion, we review the decisions of both the [IJ] and the Board about that issue.").

To the extent that the IJ's and the BIA's decisions were based on legal determinations, our review is de novo. *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 817 (11th Cir. 2004). We review the IJ's and BIA's factual determinations under the substantial evidence test, and "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Al Najjar*, 257 F.3d at 1284 (internal quotation marks omitted). Therefore, a finding of fact will be reversed "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc); *see also* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.").

"An IJ's adverse credibility determinations are also factual findings, and thus, are also subject to the substantial evidence test, and may not be overturned unless the record compels that result." *Alim v. Gonzales*, 446 F.3d 1239, 1254

(11th Cir. 2006).  We have held that adverse credibility determinations must be made explicitly, and that IJs "must make clean determinations of credibility." *Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005) (internal quotation marks omitted).  "As the trier of fact, the IJ must determine credibility, and this Court may not substitute its judgment for that of the IJ with respect to credibility findings."  *Alim*, 446 F.3d at 1254 (alteration and internal quotation marks omitted).  "Once the IJ makes an adverse credibility determination, the burden is on the alien to show that the determination was not supported by specific, cogent reasons, or was not based on substantial evidence."  *Id.* at 1254–55 (internal quotation marks omitted).

"Uncorroborated but credible testimony may be sufficient to sustain the burden of proof for demonstrating eligibility for asylum."  *Yang*, 418 F.3d at 1201.  However, "an adverse credibility determination alone may be sufficient to support the denial of an asylum application."  *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1255 (11th Cir. 2006) (per curiam) (internal quotation marks omitted).  "[A]n adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by an asylum applicant."  *Id*. (internal quotation marks omitted).  "If an applicant produces evidence beyond his own testimony, it is not sufficient for the IJ to rely solely on an adverse credibility determination in those instances."  *Id*. (internal quotation marks omitted).   However, "[t]he weaker an applicant's

testimony, . . . the greater the need for corroborative evidence." *Yang*, 418 F.3d at 1201.

"Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments." *Ruiz*, 440 F.3d at 1255.  For example, in *Chen v. United States Attorney General*, we upheld an adverse credibility determination where the IJ cited "a number of inconsistencies and discrepancies between Chen's asylum application, his credible fear interview, and his testimony at the removal hearing."  463 F.3d 1228, 1232 (11th Cir. 2006) (per curiam); *accord Dailide v. U.S. Att'y Gen.*, 387 F.3d 1335, 1343 (11th Cir. 2004) (upholding an adverse credibility determination where the applicant's testimony conflicted with, *inter alia*, his answers to interrogatories, an affidavit and deposition testimony, and documents in the record).[2]

To establish eligibility for asylum, an applicant has the burden of proving that he is a "refugee," which is defined as:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

---

[2] Because Zheng filed his asylum application in May 1993, before the May 11, 2005, effective date of the REAL ID Act, the Act's amendments to the INA's asylum provisions do not apply to his claim.  *See* Pub. L. No. 109-13, § 101(h)(2), 119 Stat. 231, 305.

8 U.S.C. § 1101(a)(42)(A); *see also Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2003).  In order to meet this burden, "the applicant must, with specific and credible evidence, establish (1) past persecution on account of a statutorily protected ground or (2) a well-founded fear of future persecution on account of a protected ground." *Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1256 (11th Cir. 2007).

"Persecution" is not defined in the INA, but we have indicated that it is "an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." *Sepulveda*, 401 F.3d at 1231 (internal quotation marks omitted). We have also stated that "mere harassment does not amount to persecution." *Id.* (alteration and internal quotation marks omitted).  In determining whether an alien has suffered past persecution, the IJ considers the cumulative impact of the alleged acts of persecution. *See Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 861–62 (11th Cir. 2007) (per curiam).  "In order to demonstrate a sufficient connection between future persecution and the protected activity, an alien is required to present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of such a protected activity." *Forgue*, 401 F.3d at 1286 (emphasis and internal quotation marks omitted).

"An applicant who has demonstrated past persecution is presumed to have a well-founded fear of future persecution." *Mejia*, 498 F.3d at 1257; *see also* 8

7

C.F.R. § 208.13(b)(1).  The presumption can be rebutted by showing that "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution" or that the "applicant could avoid future persecution by relocating to another part of the applicant's country of nationality." 8 C.F.R. § 208.13(b)(1)(i).

To establish a well-founded fear of future persecution, an alien "need only show that there is a *reasonable possibility* of suffering such persecution if he or she were to return to that country."  *Mejia*, 498 F.3d at 1256 (alteration and internal quotation marks omitted).  The alien must establish a fear that is both "subjectively genuine and objectively reasonable."  *Al Najjar*, 257 F.3d at 1289.  "The subjective component is generally satisfied by the applicant's credible testimony that he or she genuinely fears persecution."  *Id*.  "[T]he objective prong can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution."  *Id*. (internal quotation marks omitted).

### III.

Here, cogent reasons support the BIA's adverse credibility determination. The BIA correctly held that there were significant inconsistencies in Zheng's testimony.  Specifically, the BIA emphasized that Zheng testified that his father gave him information regarding a CDP chairman and that Zheng subsequently sent that chairman money and photos.  This fact, however, does not appear in either

Zheng's amended statement of events or his father's letter submitted to the court. The BIA further determined that there existed additional inconsistencies in how Zheng obtained documents relating to that chairman's arrest.

Despite Zheng's proffered explanations for this inconsistent testimony, substantial evidence supports the BIA's finding that his testimony was not credible. *See Chen*, 463 F.3d at 1232; *Dailide*, 387 F.3d at 1343. Viewing the record in the light most favorable to the agency and drawing all reasonable inferences in favor of that decision, a reasonable fact finder would not be compelled to reverse the BIA's finding that Zheng's testimony was not credible. *See Adefemi*, 386 F.3d at 1027. Accordingly, we deny Zheng's petition as it relates to the BIA's order, and dismiss the petition as it relates to the IJ's findings that the BIA did not adopt.

Moreover, the BIA correctly concluded that Zheng's experiences did not rise to the level of persecution that would compel a reversal of the IJ's decision. Specifically, Zheng told the IJ that Chinese officials never harmed him. *See Sepulveda*, 401 F.3d at 1231 (holding that verbal threats do not compel a finding of past persecution). Finally, while a forced abortion or a forced involuntary sterilization can constitute persecution, Zheng has not shown that his former wife's alleged abortion harmed him personally. *See Yang*, 418 F.3d at 1204 n.6

9

(acknowledging that an unmarried man who impregnates his girlfriend in violation of Chinese policies cannot claim persecution on this ground alone).

Upon review of the entire record on appeal, and after consideration of the parties' appellate briefs, we dismiss the petition in part and deny the petition in part.

**PETITION DISMISSED IN PART, DENIED IN PART.**